2016. 2266. Mr. Cresta. May it please the court, Joe Presto on behalf of Nintendo. This case highlights an important purpose of the written description requirement in policing priority claims. It's well settled that when a person files a continuation of part application, adds new matter to that application, and then directs claims such that they encompass that new matter, that the claim is not entitled to an earlier priority date. That's not quite true. It encompasses that new matter and is not taught by the pre-existing matter. There can easily be duplicativeness, right? Correct. So the real question is whether it's covered by the pre-existing matter. Yes, but my point was, if it is new matter, then by definition it's not covered by the pre-existing matter. And in this case, our... We've got to now find out whether it truly is new matter, which really means we've got to figure out what is in the grandparent application. Correct. And in the grandparent application, we have several embodiments. One is an embodiment that only discloses a one-way transmitter. Another embodiment is where you still have that one-way transmitter and you have a remote device that might be a cell phone, but it's not with the user. The user can't make cell phone calls on a remote device. The new invention, which was an aha moment that Mr. Massman told us he came up with with the other inventors after the grandparent application was filed, was that they could combine the sensor with the cell phone so that the user could actually communicate on the cell phone as well as sense his body movements. Nowhere in that earlier grandparent application is there a device that enables that type of Mr. Massman I mentioned. He actually put a declaration in explaining that he was added as an inventor in the CIP because after the original application was filed, he came up with the other... He and the other inventors came up with this idea of combining them into one. As I understand what the board did here is it looked at the initial embodiment disclosed in the grandparent application, which said, okay, you can have a self-contained unit with a sensor, with a processor, and an indicating means. Indicating means 41. Indicating means 41, according to the spec, can take many forms. Correct. Then in this particular present embodiment, the indicating means 41 is an RF transmitter. There's some breathing room right there in that disclosure that it's not... We're being told by the application that that embodiment is not restricted necessarily narrowly down to an RF transmitter. It's telling us that device that's operable to communicate the data to some monitor, some remote monitor, can take many forms. Then later on in the spec, we can see other disclosure of devices that are operable to that include a number of different things, computers, cell phones, et cetera. As I understand what the board did is it looked at the overall written description and concluded these particular inventors provided support for a range of devices that perform this communication action. For that reason, when we go back and try to figure out what does it mean for an indicating means 41 to take many forms, that can also... The inventors fairly contemplated cell phones. Yes, so that is what the patent office did. Now, when we look at those individual... Yeah, so why is that unreasonable? Well, it's unreasonable in our view because when you look at that statement of takes many forms, they never described any other form with respect to device that has the sensor in it. As this court explained in Power Oasis, simply saying that it may take many forms does not help unless you describe other forms. That issue came up exactly in Power Oasis that just saying it can take many forms is not sufficient. Where we get this more detailed disclosure of the cell phone technology and other things, it's not in connection with the device that the user would have with him, which is a fundamental difference. These other ones, there's a distributed embodiment where you have a one-way transmitter on the user and you have a cell phone, potentially a cell phone. It's described as a variety of things that would be mounted on a wall remote. So the user cannot use that cell phone to any type of voice communication. The only thing those earlier embodiments can do is have a transmission of an automatic signal from the sensor through the processor that the user cannot use to do voice communication, to send data messages. This is the breakthrough of the new patent as described by the inventors. Now we are going to take, as the earlier patent talked about, it's advantageous to distribute the device so that the sophisticated communication capabilities are far away. It actually is very similar to Power Oasis on the remote versus local issue. But the new embodiment said, let's bring that communication device local with the user so that you have this new thing where a user for the first time can talk on his phone at the same time monitor his body movements. There's no earlier embodiment and the patent office did not find any earlier embodiment that enabled this new functionality, which is why Mr. Massman was added as an inventor. And it's also why iLife admits that a self-contained single device that has the sensor and cell phone capabilities is not described in the earlier application. Hence, they're not entitled to the grandparent application and in your view, the sushi is effective prior art. That's exactly right, Your Honor. This is the reason we believe that written description should apply here is because there's an attempt here to get back to an earlier priority date and claim that they invented something that they did not invent. Your sushi is a dead on 102B reference. The Patent Office has already found that and the only argument they raised on your sushi and related IPRs was already rejected by the Patent Office. So if the priority is not provided, there's a 102B reference and this court does not need to remand. It simply is an invalid claims. So there really was a new matter in the CIP. That's subject to debate, right? Whether or not we would, if your sushi is prior art, that we would just automatically find the claims on patentable. Well, I think because of collateral estoppel, the identical issue was already litigated at the Patent Office. The exact issue was already litigated at the Patent Office and they lost on that issue. They chose to only raise one issue across the multiple patents that they had regarding your sushi. It was the same argument in each one. In the 331 related IPR. I mean, the claims are all probably closely related, but they're not the exact same claim. I agree with you, Your Honor, but this court's law tells us that it doesn't matter if the claim is the same. All that matters for collateral estoppel is that the issue is the same and the issue is identical. If the case happened to be remanded, the Patent Office will face the identical issue that they already addressed without any new issue to even consider. And in addition, no new arguments could be raised because under the Patent Office rules, you can't come up on appeal and go back and raise brand new issues. So the combination of collateral estoppel and waiver make a remand, actually in Nintendo's view, would be inappropriate to remand because there would be nothing to consider because of waiver and collateral estoppel. But we do, it's very important, obviously the fundamental issue here is whether there's new matter. If you look at Figure 9, Figure 9 for the first time, you're going to see a box around Figure 9. You're going to see a speaker, a microphone, the sensor, all contained within that same box, which enables the single device to provide this dual functionality, which is a fundamentally new concept that is not in the early application and the PTAB never found that that was in the early application. In fact, it's our view that the PTAB did not find that the new embodiment was supported by the old claims, by the old disclosures, excuse me. What the Patent Office did was they didn't consider whether the new matter was covered. What they felt was if we can find an embodiment in the old specification that's covered, that's good enough. And that's exactly the mistake the Power Oasis made and this court made clear was the improper legal analysis. That was a legal error by the Patent Office, not to consider whether the new matter is covered rather than looking back to see whether the old matter is also covered. And our view is that that was the legal error. Another legal error in our view is that we think that the appropriate construction would exclude the old embodiments. The Patent Office's construction includes the new and the old embodiments. Our view is that when you read the 796 specification and we provided a yellow highlighted copy for convenience of the court at A2464 that shows all of the new matter that was added by CIP. And when you read that, the titles change, the backgrounds change. Every aspect of it has changed to reflect that this idea of putting the system that they earlier described within a communication device is a brand new thing. Could you quickly address the actual reduction of practice question? Our view is that the actual reduction of practice was also an error of the Patent Office because it was based on an improper claim construction. Our view is that under the proper claim construction, simply having an RF transmitter would not be sufficient to reduce the practice claims in the CIP application. And the reason is that that RF transmitter is the invention of the grandparent application. There is a new embodiment here that requires the communication device to have the sensor in it. And the communication device being much more than just sending RF transmission signals on the sensor. They never reduced the practice anything but the 481 application, the original grandparent application. The reduction of practice is exactly the figure one and two in the grandparent application. We know, Mr. Massman tells us, that this was a brand new aha moment idea that they had to put in the... There is testimony about the reduction of practice that addresses using an RF transmitter like you said. And then there is also something about using an auto dialer, which suggests some kind of phone was also being implemented at the time of the working prototype. Yes, Your Honor. The auto dialer is part of the distributed embodiment. The auto dialer is disclosed in that original 481 application as being something that the piece that you wear on your body that received the RF transmissions could be an auto dialer, which instead of technology would cause like a landline to automatically dial. That again does not put the sensor inside a communication device to provide a dual functioning device. That auto dialer is a remote device in the 481. The user can't use it to make any calls because by definition it's remote. The only thing the user has is a one way RF transmission signal that is being sent out. And all of the early embodiments, including the auto dialer embodiment, only deal with that one way RF transmission. The auto dialer receives the RF. We're into your rebuttal time. You can continue. I'll save it. I'll save my time. Thank you very much. We do have seats for those who are standing if you are interested. And you're not disturbing us to sit down. May it please the court, good morning. Good morning. The board correctly analyzed priority in this case by doing two things. First, construing the claims, and I'll address claim construction. And second, and I think Judge Toronto already picked up on this, comparing the original grandfather 991 application to the claims as they were construed. Nintendo's priority analysis suffers from two fundamental flaws. First, Nintendo tries to impose limitations into the construction of communications device. And we heard it during opening arguments that it has to have two way communication, that it can't be remote from the person that's wearing it, that it can't be a RF transmitter. All those are limitations that Nintendo wants to impose into the definition of communication device that are improper. Well, let's assume for the moment you're fine on the understanding of what a communications device is in light of this specification. But I'm trying to figure out to what degree you need to rely on your disclosed distributed embodiment in order to find written description support, as well as actual reduction of practice, because the claims all call for the system to be within a communications device. And in your distributed embodiment that's disclosed, the sensor is not within the communications device. The sensor is down the hallway in a separate room attached to the person, and the communications device is a walled unit. I disagree, Your Honor, for this reason. If you have a distributed communication device made up of multiple components, then the system, the processor and the sensor... You have a distributed embodiment. Let's not go so quickly to say you have a distributed communications device. Well, I think that comes back to... You have to convince me of that before you can get to the next step. Well, I think that's a claim construction issue. The patent specifically says that you can have one advantageous embodiment is when the processor and their sensor are not co-located, and that is an appropriately arranged device. It uses the word device singular. The other thing that I think is important... I think that's... Perhaps that goes to the motion detection device, right? And then processing and understanding what the motion detector has detected. But then there's the communication aspect, which is not necessarily part of that motion detection processing device. So what we have in terms of written description in terms of the communication device, we have two. First, the board found that System 11, the body-worn device, by itself is a communication device. It had the sensor, the processor and the transmitter. I think that's clearly correct in terms of a claim construction standpoint. The claims only require that the system transmit. There's no requirement that it be able to receive communications from somebody else or have any of the other dual functionality that Nintendo wants to attribute it to. So the claims themselves only require transmission. So we clearly have written description support of System 11, which is an entire communication device in and of itself that has all the elements of the claim. What we also have is a distributed communications device, and the board specifically made that factual finding. And by the way, the written description decision by the board is a factual finding that's entitled to deference and must be supported by substantial evidence. And what the board found... What page? On the distributed embodiment. Are you asking what is the page of the patent that describes the distributed embodiment? The page of the board decision that said, this distributed embodiment, it's also written within a communications device. Yes, Your Honor. I believe that is the final written decision 22, I believe. I'm sorry, it's on page 21, Your Honor, in the middle of the page. It discussed the distributed embodiment that we were just discussing. In the middle, it says, based on these disclosures, we find that the grandparent application provides adequate written description support for System 11 and Remote Receiver Unit 103 being a communication device as recited in the challenge claims. And so the board has, not only in claim construction, but here in the priority analysis, made the specific factual finding that that is a communication device, those two items together. And by the way, I also think it's important, which is never acknowledged by Nintendo in the briefing, but you have to look at the dependent claims that actually discuss cell phones. For example, if you look at Dependent Claim 2, which is at Appendix 51, and this is true for Claims 2, 3, 11, and 12, the system, as claimed in Claim 1, wherein said communications device comprises one of, and then it lists, a cell phone and other devices. And I think it's critical that the use of the term comprises in the context of what the communication device is, requires that it can include more than just the cell phone. So of course, we know comprises means including but not limited to, but the way the claims were written, the communications device can include but not be limited to a cell phone or a computer or the other devices that are listed in Claims 2, 3, 11, and 12, as well as, for example, the body-worn sensor. And these claims were intended and drafted to specifically cover the distributed device environment we talked about earlier with System 11 and Remote Mobile Station 103, and the patent, of course, specifically says that Mobile Station 103 can be a cell phone. So not only is there support in the claims, we have support in the specification, and we also have a specific factual finding by the Board, which is entitled to deference, that that distributed device is a communications device within the meaning of the claims. And it's a communications device. Why does the sensor that you're wearing get to be called part of a communications device? Is it because that sensor has some kind of RF transmitter, and so therefore, that sensor is, in a sense, communicating with the wall unit, with the remote unit? Exactly, Your Honor. That is the description. You have the sensor 11, and then the wall unit has its own, I guess, communication device. It's communicating to the monitor. It receives communications, obviously, from System 11, and it's described as it could be an auto dialer. It's described as having one option, having embedded cellular technology. It's described as being a cell phone. So that distributed device, the communications device in that description is both components. And one of the important decisions that was made by the Board in the claim construction is two things, and Nintendo's claim construction refuses to address either one. One is, is transmission sufficient? And I think based on the claim language itself that only requires transmission and the other things that were cited by the Board, transmission is sufficient to be a communications device. But the other thing that was addressed by the Board is what I pointed to in the final written decision on page 21, and it's well briefed in our claim construction section in our red brief, and that is a communications device can be made up of multiple components. That's specifically called out in the specification in a couple of different places, both columns 10 and 11 discuss this distributed device, and the Board make that factual determination that that is a communications device and that it met the written description requirement. And there is substantial evidence to support that Board finding, and it should not be disturbed. One thing I want to address with respect to Nintendo's argument is this backwards analysis of priority. This is fundamental to their analysis of the written description issue. Nintendo's position is that if the claims, if the claims that Nintendo is making are the CIP claims encompass any new matter, then you're not entitled to priority date. And that's directly contrary to long-standing Federal Circuit law that you can have description support in both the original application and the CIP, and when you have common matter like that, the original application is entitled to priority. We've cited the Santara's case, Judge Newman, that says that that concept, where it's supported both by the original application and also appears in the CIP. Can you explain why the purported new co-inventor in his declaration said, we're adding all this new matter and we're claiming a new invention, and the new invention is installing the system in a cell phone? Well, I think that's the way Nintendo characterizes the testimony, but it's not accurate. What Mr. Massman said, and I think Mr. Massman's testimony is a red herring on this written issue, what he said was that first of all, he was very, very clear, he was not involved in the original invention, that by the time he came to the company, they already had a working device like is described in the 481. So he was not involved in the original invention that includes system 11, includes the distributed device with the auto dialer. He's very clear in paragraph six of his declaration, that's at A2-2024, that he was not involved in that. He did not say, as Nintendo characterized it, that he was involved in a new invention. What he says is he had discussions with the inventors about new embodiments, and that new material was added to the CIP to discuss that. They did beef up the written description in terms of communication device, and when you file a CIP, you don't know what's going to be required by the examiner in terms of written claims issued, none of those claims required any of that new material. As I've already mentioned, even the dependent claims that mention a distributed system that has a cell phone is already supported by the original 991 application. Are there other claims that did require the added material? None of the disputed claims require that. I haven't analyzed the ones that issued that aren't in dispute or weren't challenged, but at least at first blush, it does not appear that any of the claims require the new material. For example, none of the claims state that everything would have to be contained in a cell phone. None of the claims require that. The only claims that even mention a cell phone are claims 2 and 11, and as I already mentioned earlier, all that says is you have a communications device that comprises a cell phone. Should this added inventor have been added as a co-inventor? Well, I think at the time of the application, they had these discussions, they beefed up the specification, and again, you don't know how a claim is going to be construed, you don't know what the examiner is going to require in terms of 112, and so I certainly understand if he was involved in those discussions, why he would have been added as an inventor, and you also don't know what claims you're going to get. But in retrospect as to these claims, all of these claims are fully supported by the grandparent application, which is the factual determination that was made by the board, and based on the board's claim construction, and based on the board's priority analysis, he's not an inventor as to these disputed claims. I want to briefly address reduction of practice. I'm sorry, one other question. In your view, how did the, as I understand it, the communications device limitation was added to overcome a possible double patenting, rejection, or objection, or something. How in your view did it do that? Well, very simply, the 481, the original grandparent application and the 481 patent didn't have a communications device requirement. So the 481 claims were very broad. It didn't require transmission. For example, claim one of the 481 just requires you have a system, you have a processor, you have a sensor, and that it processes the acceleration in a certain manner. It doesn't require transmission and doesn't require communications. So adding a communication device element and also adding the transmission element, which all the claims, at least in the 796 patent, require transmission as well, none of that was required by the original 481 patent. And so it is patentably distinct and it does add a new limitation. With respect to, briefly, reduction of practice, I think the board's decision with respect to reduction of practice for most of the claims is very clear. When you properly construe the claims as the board did and as... Well, this is the issue on that. So with respect to claims 2, 3, 11, and 12, which is, I assume, what Judge Tronto is, what you're referring to, which is the ones that comprise a cell phone or a computer. We've cited law on that with respect to the extent to which you have to swear behind a particular reference. And if you give me one moment. By the way, it's discussed in the red brief 55 to 64, and this law has never been disputed or contested in the reply brief. They didn't address it at all. What the law says, based on the Stimple case, is that all the applicant is required to show is priority with respect to so much of the claimed invention as the reference happens to show. So you look at the extent of the disclosure in Yasushi, and so long as your reduction of practice evidence is commensurate in scope with what Yasushi shows, Yasushi is removed as a reference for all purposes. That's the Stimple case, 241F second 755. It's cited in the brief again. And by the way, this is... You're saying the actual reduction of practice doesn't need to support the breadth and scope or specificity of your claims? With respect to elements that are not disclosed in the reference, such as, for example, I'm going to put everything on a computer, which isn't discussed in Yasushi or a cell phone. You're only required to show reduction of practice to the extent of the reference. Actual reduction of practice analysis is dependent on what the purported prior art reference discloses, not based on what the claim language is? You do have to reduce to practice the claims, and the board specifically found, by the way, made a factual determination that we did show reduction of practice of all disputed claims. So let's get that clear, that the board has made that factual determination, very detailed analysis that reduction of practice was shown as to all claims. But when it comes to these dependent claims, 2311 and 12, yes, if you look at the MPEP 715.02, it discusses the rules, it discusses all the cases. Many of those cases are also discussed in the red brief. What it says specifically is, yes, if you show in your reduction of practice evidence all that the reference shows, then you don't have to show more. You remove it as a reference. It's no longer 102A art, and it's removed for all purposes. And it makes sense in the context of 102A. What 102A says is that you're entitled to a patent unless a printed publication shows the invention prior to your date of invention. If your sushi doesn't show those additional elements, it's not 102A art. And so I think this issue is discussed extensively in 55-64, the red brief, and also MPEP 715.02. And so even setting aside the board's decision about reduction of practice of all claims, which I think is entitled to deference and is correct and supported by substantial evidence, this argument about what you have to show to swear behind a reference with respect to claims that include elements that are not discussed in the prior art reference, here is your sushi, I think also requires that even if you were to consider the reduction of practice evidence inadequate for 2311 and 12, which are the dependent claims that have the cell phone, et cetera, this law... Thank you, Mr. Wilson. We have the point. Thank you, Your Honor. Mr. Prester? Thank you, Your Honor. We'll give you four minutes. Thank you. Just briefly on the reduction of practice, there was an admission here that you have to at least reduce the practice what's disclosed in the prior device. The Yoshishi reference teaches that the sensor is in what they call a personal handy phone system. It's within the same device. That's why Yoshishi is a dead-on 102 reference to the claims. And that is the disclosure that putting in a cell phone is a record at 294. Now, getting back to the distributed embodiment, the distributed embodiment, when you look at the new claims, the claims expressly are excluding the distributed embodiment. The distributed embodiment said, don't put these things in the same device. The CIP was a complete reversal when Mr. Massman had the aha moment of let's put it all together because the reasoning is set forth in the background of the specification in column two, lines 19 to around 33, where Mr. Massman noticed that people were carrying around, very commonly now, cell phones. Cell phones were starting to become common. People were not carrying around distributed devices. The problem is the Patent Office ignored the context of the term communication devices being used in the CIP application. The communication device is not a dedicated RF transmitter that's dedicated to sending body signals. It's to let the user do voice and data communication. That's what figure nine shows us. Let me just tell you what's on my mind right now. I'm thinking of an example of something to do with wireless earbuds and then like a cell phone that's maybe working with a streaming website to get music. And then the music goes to the machine, the phone, and then the music goes from the phone to my wireless earbuds. Are the earbuds and the phone together a communications device? Why couldn't you consider that mix of elements together as a communications device? I think there are many devices that could be potentially distributed that could be a communications device. But the communication devices that we're talking about in the CIP application are devices that enable the user to communicate, not just automatic sensing of sensor signals. That's the old invention. So your bud having a distributed device on you that enables you to communicate to different devices that are on the user, maybe that could be a communication device in the CIP application. But that's not what we have here. Right. You know, what we're wrestling with here is that the board already made a fact-finding and now we're trying to wrestle with that fact-finding and then decide, okay, they said that this particular embodiment, this so-called distributed embodiment, is collectively a communications device. I understand, Your Honor. That comes back exactly to the law of this court that set forth in power of leases. There was an earlier embodiment that is different. There's no question that that distributed embodiment is different. In fact, it's fundamentally different. In fact, the claim language we think excludes that embodiment. As Your Honor said, that is not within, it's not a system within a communications device. So we don't even think that distributed embodiment should be a communications device. Unless the whole distributed embodiment is a communications device. Right. I guess that's the problem. Right. I'm trying to figure out. Well, the reason it's not a communications device in our view is that it doesn't enable the user to communicate. Figure nine allows voice communication. The distributed embodiment does not allow the user to do anything. It doesn't add any user communication functionality whatsoever. All it does is offload some of the processing capability to a device that's on the wall that can communicate to a monitoring station. The user cannot use it to make calls, two-way texting, or anything else. That is the aha moment that Mr. Massman came up with and was added to the specification for that specific purpose. And this gets down. Even if the distributed embodiment was covered, Your Honor, this is exactly the Power Oasis situation where you had a user interface on a vending machine that did not provide support for a user interface remotely on a user's laptop. We have that exact same situation here in reverse. They told you in the original case to put things in remote locations. Now in the CIP, they're telling you, oh, we got a great new idea. Let's put it all in one. That's exactly the situation in Power Oasis, and it's the legal decision that the patent office made that was wrong. They looked at whether C-old embodiments were covered, rather than the critical question is whether new matter is encompassed by those claims. The patent office did not decide. Thank you, Mr. Preston. Your communication device is looking red. Thank you. Thank you, Your Honor, very much. Thank you. We will take the case under revision.